# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **JASEN DUNNELL GINS** LA. DOC #469895 VS. | **CIVIL ACTION NO. 09-0110** SECTION P |
| **J.B. EVANS CORRECTIONS CENTER, ET AL.** | **JUDGE JAMES** **MAGISTRATE JUDGE HAYES** |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Jasen Dunnell Gins, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on December 15, 2008.[1] Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the J.B. Evans Correctional Center (JBECC), Newellton, Louisiana, and he complains that he received inadequate medical care following an injury he sustained in September 2008. Plaintiff sues JBECC, Warden Deville, Dy. Warden Pailette, nurses Allen, Peggy and Smith and Captain John McTear; he seeks compensatory and punitive damages and an injunction directing various upgrades to the JBECC medical department. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

---

[1] Gins filed suit in the United States District Court for the Eastern District of Louisiana; that court determined that venue was inappropriate and transferred the complaint to this court in accordance with the provisions of 28 U.S.C. §§1406(a) and 1404(a). [rec. docs. 4 and 5]

*Background*

*1. Original Complaint [rec. doc. 1]*

Plaintiff is an LDOC inmate who is incarcerated at JBECC. On September 19, 2008, plaintiff injured his ankle and was helped off the yard back into his dorm. He encountered Lt. Campbell and asked if he could see the jail nurse. Campbell advised that the nurse was getting something to eat and was unavailable. Campbell advised plaintiff that he would alert the nurse to plaintiff's problem upon her return.

Two hours passed and plaintiff, with the assistance of a fellow inmate, was told to go to the facility's medical department. He was examined, given an 800 mg Ibu[2] and an Ace Bandage, and he was given 48 hour bed rest.

When the 48 hour period passed, plaintiff was taken off of bed rest without further examination. He required the assistance of a fellow inmate to get him to the dining hall and pill call. According to plaintiff, his foot remained obviously swollen.

That night, Sgt. Bosely and Corrections Officer Davis made their rounds and upon seeing plaintiff's swollen foot, brought him to see Nurse Peggy. Plaintiff was examined and afforded another 48 hours of bed rest. Nurse Peggy, having discovered that plaintiff had not been added to the "doctor list" added him at that time. Thus, plaintiff was scheduled to see a physician on September 25. However, the physician did not arrive as expected. Plaintiff was provided

---

[2] "Ibus" or Ibuprofen, are nonsteroidal anti-inflammatory drugs (also called NSAIDs) and are used to relieve some symptoms such as inflammation, swelling, stiffness, and joint pain. Some of these medicines are also used to relieve other kinds of pain or to treat other painful conditions, such as gout attacks; bursitis; tendinitis; sprains, strains, or other injuries; or menstrual cramps. Ibuprofen and naproxen are also used to reduce fever. Non-steroidal anti-inflammatory drugs may also be used to treat other conditions as determined by a physician. See Medline Plus, a service of the Untied States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202743.html

medication for pain. Plaintiff requested something to immobilize his ankle but Nurse Peggy advised that the facility had no such device.

A few days later plaintiff advised Nurse Peggy that he was still in pain, that the medication was no longer effective and that he had not yet been examined by a physician. Nurse Peggy again put plaintiff on the list of patients to see the physician.

When the corrections officers stopped bringing plaintiff his pills, plaintiff complained to Capt. McTear. McTear advised plaintiff that it appeared as though plaintiff was capable of getting his own medication. Plaintiff showed McTear his foot and McTear told plaintiff that he should be off of bed rest and capable of getting his own medication.

On some unspecified date, approximately two weeks after his accident, plaintiff was examined by a physician at JBECC. The physician ordered x-rays.

Two to three days later plaintiff was again examined by Nurse Peggy. At this time his foot was still swollen. Nurse Peggy requested that plaintiff be sent to the hospital but her request was denied by the Warden.

On the following day plaintiff was taken to a nearby hospital for x-rays – 16 days after his accident. Over the course of the next few days plaintiff made three trips to the hospital. The physician provided a splint or cast, but it was taken off because it affected the blood flow to plaintiff's foot. The physician also remarked that plaintiff's blood pressure was high.

Plaintiff concluded his original pleading with a general complaint that JBECC's medical department does not meet "the minimal constitutional standards" because it does not have emergency equipment (defibrillation and suctioning equipment) or equipment needed for routine care such as x-ray and laboratory equipment.

Plaintiff also provided a copy of the Grievance he submitted on September 29, 2008, which stated, "I've been in much pain, my foot I can't move it like I want, it is getting bigger and then it go down, the aid from Ms. Allen here was inadequate, the pill I'm taken is not helping. I've been like this since the 19 or 20, the inadequate aid has cause me to be in much pain and cause my foot to turn green." Plaintiff requested x-rays, "some better pills", to see the doctor and to be compensated for pain and suffering. [rec. doc. 1-3, p. 10]

*2. Motion for Counsel [rec. doc. 11]*

On March 2, 2009 plaintiff filed a pleading entitled "Motion to Assigned Counsel/Oral Argument." Plaintiff requested the appointment of counsel and asserted his need for medical records.

*3. Summary Brief [rec. doc. 12]*

On March 3, 2009, plaintiff filed a pleading entitled "Summary Brief." Plaintiff made the following allegations:

1. On September 19, 2008, Lt. Campbell advised Nurse Allen that plaintiff had "twisted/broken his ankle." Allen examined plaintiff but did not send him to the hospital or provide "some kind of arch support" as requested by plaintiff. Instead, she provided an ACE bandage and medication and put plaintiff on 48-hour bed rest.

2. At the conclusion of the first 48-hour period, plaintiff was taken off of bed rest without further examination. Plaintiff's leg, ankle, toes, and foot were swollen and discolored. Plaintiff was observed by two corrections officers who brought him to Nurse Peggy for further evaluation.

3. After two weeks plaintiff was examined by Dr. Newman who ordered a splint for plaintiff. According to plaintiff, Dr. Newman also ordered that plaintiff's foot remain elevated.

4

However, Nurse Allen did not supply the device. When plaintiff asked for more pain medication, Nurse Allen responded by advising him that his body was getting used to the medication and it was no longer having the desired effect. Allen advised plaintiff to purchase over-the-counter medication from the prison store.

    4. On the evening of October 3, 2008, Nurse Peggy called Warden Pailette at her home and requested permission to send plaintiff to the hospital; permission was denied that night.

    5. Nevertheless, on some unspecified date plaintiff was transported to the hospital. He complained that the van in which he was transported was not adequately equipped and thus plaintiff suffered pain in the course of the journey to the hospital.

    6. During the course of his convalescence Captain McTear refused to recognize the nurse's "bed rest" order and plaintiff was therefore required to walk in order to obtain medication and food.

    7. At some point in time plaintiff was diagnosed with hypertension, which he implies, was brought on by the stress of his injury.

    8. Plaintiff "took many trips to the hospital"; nevertheless, Nurse Smith failed to supply the transportation officer with plaintiff's pain medication and blood pressure medication. Plaintiff complained that the drug distribution systems at JBECC were inadequate.

    9. Dr. Newman has prescribed medication to be taken every 8 hours to control plaintiff's hypertension. Plaintiff claims that on one of his hospital visits a nurse advised him to see a physician at JBECC upon his return, but plaintiff claimed that none were available at that time. He also complained that the physician comes to treat prisoners at JBECC only a half day per week and that is insufficient.

10. Plaintiff concluded that his injury was more than "*de minimis*" since he experienced high blood pressure and "his foot turned many colors, red, blue, purple, green" and was swollen twice its size. Plaintiff claimed that the actions described in this pleading evidenced deliberate indifference on the part of the defendants.

*4. Summary Brief [rec. doc. 14]*

In a second pleading filed as a separate suit, plaintiff alleged more or less identical claims. Plaintiff provided the following description of his injury, " ... plaintiff was left in much pain, his foot was many colors such as green, red, purple and blue, his leg, foot and toes ankle was twice the size and was getting bigger ..." and he developed hypertension. [rec. doc. 14, p. 3]

*5. Summary Brief [rec. doc. 15]*

In yet another pleading filed on March 9, 2009, plaintiff again asserted claims of deliberate indifference with respect to all of the defendants. In addition, he again described the nature of his injury as follows: "The alleged injury sustained as a result of all alleged violations, besides the [swelling] of the leg, foot, ankle, toes, Doctors diagnosed Gins with 'hypertension' which is called the 'silent killer'. Hypertension is diagnosed when you have three high pressure readings on three different measurements... The plaintiff feels that this condition [was] sustained when the night Warden Pailette denied Nurse [Peggy's] phone call. The amount of pain Gins was in, stress, anger, anxiety... Gins went through almost 6 (six) initial screenings when he enter many facility, and it was never noted that Gins had such a condition until now. Doctor's put Gins on a heart healthy diet, it's been also noted Gins must take or keep taking his blood pressure pills..." [rec. doc. 15, pp. 11-12]

*Law and Analysis*

*1. Appointment of Counsel*

Plaintiff has requested appointment of counsel to assist him in litigating his claims. [rec. doc. 11] Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff. In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of

evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff has managed to file his original complaint and several amended or supplemental complaints setting forth his cause of action against the named defendants. No special legal knowledge has been required of plaintiff herein; he appears to have a grasp of the applicable law and has shown an ability to articulate the factual basis of his complaint. Indeed, plaintiff, and no one else, has first hand knowledge of the facts which form the basis of this action. The claim is not necessarily atypical of those often asserted in civil rights litigation and is not complex.

Finally, plaintiff has failed to demonstrate that he has attempted to procure counsel on his behalf. Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel. Moreover, plaintiff's request should be denied because plaintiff has failed to demonstrate any effort to secure counsel on his own behalf.

## 2. Screening

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of

process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A.*

9

*(Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint alleges facts sufficient to conduct and conclude a preliminary screening pursuant to §1915. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that his medical care complaint is frivolous.

### 3. Medical Care

Medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, the plaintiff must show "deliberate indifference" on the part of the defendants. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that <u>they subjectively intended that harm occur</u>. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994).

Thus, even "... the failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied).

Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). Finally, disagreement with diagnosis and treatment cannot support a claim of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

Plaintiff claims that the defendants delayed treating his injured ankle; however, a liberal reading of his complaint belies that claim. By his own admission, plaintiff "twisted" his ankle on September 19, 2008. He was examined by Nurse Allen who provided ibuprofen and an Ace Bandage and 48 hours of bed rest – all recognized therapies for a sprained ankle.[3] When his condition did not improve, he was examined by a physician and, over the course of the next few

---

[3] A sprain is an injury to the ligaments around a joint. Ligaments are strong, flexible fibers that hold bones together. When a ligament is stretched too far or tears, the joint will become painful and swell. Sprains are caused when a joint is forced to move into an unnatural position. For example, "twisting" one's ankle causes a sprain to the ligaments around the ankle. Symptoms include joint or muscle pain, swelling, stiffness and discoloration of the skin. Treatment recommendations include (1) the application of ice to reduce swelling; (2) the use of an Ace Bandage to immobilize the joint; (3) elevation of the swollen joint; (4) bed rest; (5) and aspirin, ibuprofen, or other pain relievers. See Medline Plus, Encyclopedia, A Service of the U.S. National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/ency/article/000041.htm

weeks he "took many trips to the hospital" where he received treatment not only for his ankle injury, but also for the hypertension that was discovered.

Plaintiff has not shown that the treatment he received as a prisoner was in any way different than the treatment he would have received in the free world. He has not demonstrated that the defendants "'refused to treat [him], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.[4]'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)).

In short, plaintiff's medical care claims are frivolous.

## *4. Conclusion and Recommendation*

Considering the foregoing

Plaintiff's Motion to Appoint Counsel [rec. doc. 11] is **DENIED;** and,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. §1915(e)(2)(B).

---

[4] Plaintiff's injury – while no doubt painful – did not present a "serious medical need" as contemplated by the jurisprudence. With regard to analysis of complaints alleging such injuries, it has been suggested that "...an appropriate ... standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?" *Luong v. Hatt*, 979 F.Supp. 481, 486 (N.D. Tex. 1997). Such an injury would, by definition, be, "... an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care." *Id*; See also *Dotson v. Correctional Med. Servs.,* No. 05-1387-T, 2008 WL 4767805, at *4 (W.D.Tenn. Nov.3, 2008), cited in Richard v. Martin, No. 08-1399, 2009 WL 8666 (E.D.La, January 13, 2009) (although inmate alleged that he could not walk after ankle injury and that he suffered "severely torn tissue and ligament damage, tendinitis, severely swollen tissue and ligaments, and soft tissue swelling and bone marrow edema," court found that his sprained ankle was not a serious medical need)

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, April 29, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE