IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **JASEN DUNNELL GINS** | * | **CIVIL ACTION NO. 09-0110** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **SHIRLEY PAILETTE, DEPUTY WARDEN** | * | **MAGISTRATE JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, are cross motions for summary judgment filed by the plaintiff Jasen Dunnell Gins ("Gins") and the defendant Deputy Warden Shirley Pailette ("Pailette"). Docs. # 33, 35. For reasons stated below, it is recommended that plaintiff's motion be **DENIED** and that defendant's motion be **GRANTED.**

## BACKGROUND

The facts of the instant civil rights complaint, filed pursuant to 42 U.S.C. § 1983, arise out of an ankle injury Gins suffered on September 20, 2008 while he was an inmate at J.B. Evans Correctional Center (JBECC) in Newellton, Louisiana. Doc. # 33 at 2. A nurse at JBECC attended to Gins on that same day and ordered him to twenty-four hours of bed-rest. Doc. # 35, Ex. A at 18. The nursing staff at JBECC also attended to Gins on September 21, September 22, September 29, and October 2. *Id.* On each of these occasions, the nursing staff documented that Gins' ankle was swollen and ordered him to bed-rest. *Id.*

On October 3, 2008, Dr. Neuman, a contract physician at JBECC, examined Gins and arranged for Gins to be transported before October 10 to the E.A. Conway Hospital (EACH) in

Monroe, Louisiana, where x-rays of his ankle would be taken.  Doc. # 33 at 3; Doc. # 35, Ex. E.  The medical administrative staff at JBECC received Dr. Neuman's order on October 6 and arranged for Gins to be transported to EACH on October 7.  Doc. # 33 at 33.

On the night of October 6, 2008, Nurse Heidi Peddy (Peddy) attended to Gins after he reported feeling pain in his feet, ankle, and calf.  *Id.* at 12.  Peddy documented in her notes that she called Pailette and spoke to her "at length" about the "need for [Gins] to go out [that night]" to the hospital because of Peddy's "concerns" that Gins was suffering from Compartment Syndrome or Deep Vein Thrombosis (DVT).  *Id.* at 19.  Pailette apparently responded that Gins could not go to the hospital that night because the one driver at JBECC who takes inmates to the hospital was already scheduled to take a different inmate to the hospital, and JBECC has a policy that each inmate en route to the hospital be accompanied by an individual guard.  *Id.*  According to her notes, Peddy "voiced again about [the] urgency" of Gins' condition, but was ultimately "reassured by [Pailette] that [Gins] will go out [on the next day]."  *Id.*  Gins was transported to EACH on the next day, October 7, 2008, where he received treatment for the pain he was feeling and x-rays were taken of his ankle.  *Id.* at 4; Doc. # 35, Ex. A at 20.  Gins was ultimately diagnosed with a sprained ankle.  Doc. # 35, Ex. E.

In his motion for summary judgment, Gins essentially argues that Pailette's decision to delay his trip to the hospital until October 7 amounted to deliberate indifference in violation of the Eighth Amendment.  In her opposition memorandum to Gins' motion as well as in her own motion for summary judgment, Pailette contends that Gins' medical condition on the night of October 6 was not sufficiently serious to merit a finding of deliberate indifference and also that Gins did not suffer the requisite amount damages to warrant a finding in his favor.

## LAW AND ANALYSIS

<u>Summary Judgment</u>

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. RULE 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

Summary judgment will be granted only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Robinson v. Orient Marine Co.*, 505 F.3d 364, 366 (5th Cir. 2007) (quoting FED. R. CIV. P. 56(c)). In making this determination, the court reviews all facts and inferences in the light most favorable to the non-movant. *Id*. "[O]nce the moving party meets its initial burden of pointing out the absence of a genuine issue for trial, the burden is on the nonmoving party to come forward with competent summary judgment evidence establishing the existence of a material factual dispute." *Clark v. America's Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997) (citation omitted). After adequate time for discovery, Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Eighth Amendment

"To prevail on an Eighth Amendment claim for deprivation of medical care, a prisoner must prove that care was denied and that this denial constituted deliberate indifference to serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It is not enough to demonstrate that the defendant was negligent, rather it must be shown that the actions were so reckless as to amount to the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *Sibley v. LeMaire*, 184 F.3d 481, 489 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Thus, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). Moreover, the mere fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. *See Norton*, 122 F.3d at 292.

The Fifth Circuit has set forth a three prong definition of deliberate indifference in the context of the deprivation of medical care to a prisoner. *Thompson*, 245 F.3d at 459. A prisoner establishes that prison officials acted with deliberate indifference by demonstrating that (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates the official subjectively intended that harm occur. *Id.*

Finally, when a prisoner specifically contends that prison officials delayed in providing him with medical care, as Gins does in this case, the Fifth Circuit has stated that the prisoner

4

establishes an Eighth Amendment violation only if he demonstrates (1) that the officials acted with deliberate indifference; and (2) that their deliberate indifference caused him substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). The court will consider each of these factors in turn.

### A. Deliberate Indifference

In support of his motion for summary judgment, Gins primarily relies on Nurse Peddy's notes from October 6, 2007. He specifically points out that Peddy "spoke at length" to Pailette about the "need for Gins" to go to EACH that night because Peddy believed that Gins was suffering from Compartment Syndrome or DVT, both of which the defendant concedes are serious medical conditions. Doc. # 33 at 19; Doc. # 40 at 2. Gins also points out that after Pailette explained to Peddy that JBECC security procedures dictated that Gins go to the hospital the next day, Peddy "voiced again about the urgency" of Gins' condition. Doc. # 33 at 19.

In her memorandum in opposition to Gins' motion, as well as in her own motion for summary judgment, Pailette observes that Peddy's notes indicate that Peddy was ultimately "reassured" when Pailette told her that Gins would go to EACH on the morning of October 7. *Id.* Gins' condition on October 6, Pailette argues, could not have been a medical emergency requiring immediate attention if Peddy was "reassured" when Pailette told her that Gins would go to the hospital the next day.

Pailette also submitted several affidavits. In her own affidavit, she averred that she does not "recall" getting a telephone call from Peddy about Gins on October 6, 2008. Doc. # 35, Ex. C. However, Pailette also averred that "when more than one inmate is taken to the hospital at night, because of increased security concerns, that the preferred method [at JBECC] is for each

5

inmate to be accompanied by an individual guard." *Id.*  Pailette further averred that when the medical staff at JBECC notifies her that a patient's condition qualifies as a medical emergency "she cannot deny the transportation to the hospital or physician or such inmate, and must act to arrange appropriate transportation for the inmate to the hospital as soon as possible." *Id.*

In addition, Nurse Peddy averred that "the medical condition of [Gins] on October 6, 2008, was not an emergency or such that it required immediate transportation of Gins to the hospital." Doc. # 35, Ex. D.  Peddy also averred that in her phone call to Pailette, she explained that Gins' medical condition was "not an emergency . . . which required immediate transportation of [Gins] to the hospital." *Id.*  Finally, Peddy averred that "she decided that transportation to the hospital of [Gins on October 7, 2008] was acceptable for the treatment of [Gins'] medical condition." *Id.*

Pailette also provided the court with a "Medical Transportation Form" that Peddy filled out after she attended to Gins on October 6.  Doc. # 35, Ex. A at 28.  This form documented the details of Gins' trip to the hospital on October 7.  In the "Method of Transportation" section of the form, Peddy checked "Van" instead of "Ambulance."  *Id.*  Pailette contends that Peddy's decision not to transport Gins to the hospital in an ambulance indicates that Gins' condition was not a medical emergency.

Finally, Pailette submitted the JBECC nursing staff's notes from October 7.  These notes state that on the morning of October 7 Gins left JBECC for the hospital in "stable condition."  Doc. # 33 at 20.

Viewing the evidence before the court in the light most favorable to Gins, the undersigned cannot say that a genuine issue of material fact exists on the issue of deliberate

6

indifference. Even Nurse Peddy's notes - the primary evidence upon which Gins relies to support his motion and to oppose Pailette's motion - negate Gins' contention that his condition on October 6 qualified as a medical emergency because Peddy, who had been "concerned" that Gins was suffering from a serious medical condition, was ultimately "reassured" by Pailette when Pailette told her that Gins would go to the hospital the next morning. Doc. # 33 at 19. Furthermore, Peddy's decision to transport Gins to the hospital in a van instead of an ambulance, the JBECC nursing staff's notes which provide that Gins left for the hospital on the morning of October 7 in "stable condition," as well as Peddy's affidavit further demonstrate that Gins' condition on October 6 did not qualify as a medical emergency, and as a result, that Pailette's decision to delay Gins' trip to the hospital until October 7 did not constitute deliberate indifference.

.	**B. Substantial Harm**

Even assuming that Gins was able to demonstrate that Pailette acted with deliberate indifference, he would still be unable to demonstrate that Pailette violated his rights under the Eighth Amendment because he cannot establish that he suffered substantial harm as a result of Pailette's decision to delay his trip to the hospital. *See Mendoza*, 989 F.2d at 195.

Gins asserts that he suffers from high blood pressure, pain in his right foot, rashes, and headaches because Pailette delayed his trip to the hospital. Doc. # 33 at 2. However, the only summary judgment evidence that Gins has provided the court on this issue are medical reports from July of 2007 and November of 2008. *Id.* at 45, 62. According to these reports, Gins' blood pressure in July 2007 was 126/76 and his blood pressure in November 2008 was 155/99. *Id.* Measurements of Gins' blood pressure approximately sixteen months apart, however, says

7

nothing about whether Pailette's decision to delay Gins' trip to the hospital was the cause of Gins' increased blood pressure - an element of this case upon which Gins would have the burden of proof at trial.

Furthermore, the evidence that Pailette has provided the court conclusively demonstrates that Gins suffered no harm at all as a result of Pailette's decision to delay his trip to the hospital. On October 7, 2008, the nursing staff at JBECC noted that Gins was in "stable condition" and experiencing "0 distress." Doc. # 35 at 20. In his affidavit, Dr. Neuman averred that "in his medical opinion, x-rays taken one day earlier on October 6, 2008 would not have shown any different medical outcome than the x-rays taken of Jasen Gins on October 7, 2008." Doc. # 35, Ex. E at 2. Furthermore, a medical report from EACH on November 13, 2008, indicated that Gins' ankle had completely healed. Doc. # 35, Ex. A at 25. Finally, and most importantly, Gins was never diagnosed with either Compartment Syndrome or DVT. What was ailing Gins on October 6, 2008, was a sprained ankle, which the medical staff at EACH and JBECC promptly remedied. Doc. # 35, Ex. E. Accordingly, the undersigned finds that no genuine issue of material fact exists on the issue of substantial harm.

## CONCLUSION

For the above assigned reasons,

It is recommended that plaintiff's motion for summary judgment (Doc. #33) is **DENIED**, and defendant's motion for summary judgment (Doc. # 35) is **GRANTED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within

**fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 5th day of March, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE